UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

       THEODORE R. MOEN, III
       and JULIE C. MOEN,                     Case No:      08-30874
                                            Ch. 7

       Debtors.

_____/

GLEN KELLY, DIANA KELLY,
ANDREW AHO and PAMELA AHO,

       Plaintiffs,

v.                                            Adv. Pro. No: 08-03101

THEODORE R. MOEN, III,

       Defendant.

_____/

Opinion Granting in Part and Denying in Part
Plaintiffs' Motion for Summary Judgment

The Plaintiffs commenced this adversary proceeding under §§ 523(a)(2)(A), (a)(4),

and (a)(6) of the Bankruptcy Code seeking a determination that debts owing by the Defendant

are non-dischargeable. The Defendant is indebted to the Plaintiffs pursuant to an Amended

Final Judgment entered after a jury rendered a verdict in favor of the Plaintiffs and against the

Defendant in a state court civil action. The Plaintiffs now move for summary judgment on their

three count complaint. The central issue before the Court is whether the Amended Final

Judgment collaterally estops the Debtor from relitigating any of the elements under

§§ 523(a)(2)(A), (a)(4), or (a)(6). The Court grants Plaintiffs' motion as to Count I, but denies

the motion as to Counts II and III.

## I. Jurisdiction

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1) and E. D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## II. Facts and Procedural Background

The parties were previously involved in significant and lengthy litigation in state court. The following summary of the facts are largely undisputed and were obtained from the parties' briefs and the transcripts from the state court civil action that are part of the record in this proceeding. (Plf.s' Mot. for Summ. J. (Docket no. 31) and Def.'s Resp. (Docket no. 41 and 42).)

The Debtor, Theodore R. Moen, III, is a real estate agent. He was formerly employed as an independent contractor with Garrow-Loftis, Inc. ("Garrow-Loftis"), a real estate brokerage firm. Sometime in late 1999 and early 2000, the Debtor along with another real estate agent, Joe Snell, successfully obtained the exclusive listing contract for Garrow-Loftis on a residential subdivision development known as Sugar Maple Farms located in Flint, Michigan. In June 2000, the real estate developer, Mary A. Rolfe, Inc. and the City of Flint entered into an agreement for the development of the property at Sugar Maple Farms.

In late 2000 to early 2001, the Plaintiffs, Glen and Diana Kelly (the "Kellys"), contacted the Debtor to learn more about the Sugar Maple Farms development. After meeting the Debtor at the Sugar Maples Farm site and discussing the plans for the development, the Kellys put a

$500 deposit down to reserve a lot.  In May 2002, the Kellys, with the Debtor acting as their real estate agent, listed their existing home for sale.  In July 2002, the Kellys closed on the purchase of their lot at Sugar Maple Farms and the construction of their new home by MAR Construction Co., L.L.C.   At some point during the summer of 2002, the Kellys' existing home was sold subject to the condition that the Kellys did not have to vacate their home for 90 days in order to coordinate their move with the expected completion date of their home in Sugar Maples Farm in November 2002.  Contrary to their expectations, the Kellys were required to live with their son for a period of time because their home in Sugar Maples Farm was not completed by November 2002.  The Kellys were informed by the Debtor that their move in date for their new home in Sugar Maples Farm would be delayed until January 2003.  An additional delay arose and the Kellys learned from the Debtor that they would not be able to move in to their house in Sugar Maples Farm until March 2003.

In October 2002, the Plaintiffs, Andrew and Pamela Aho (the "Ahos"), put a deposit down on a lot in Sugar Maple Farms after meeting with the Debtor to discuss the development. During this same time, the Ahos entered into an construction agreement with MAR Construction Co., L.L.C., for the building of a new home on their lot in Sugar Maple Farms.  In November 2002, the Ahos, like the Kellys had done, hired the Debtor to act as their real estate agent to sell their existing home.  In December 2002, the Ahos closed on the purchase of their lot and the construction loan for the building of their new home in Sugar Maple Farms.  The Ahos had been informed by the Debtor that they would be able to move in to their home in Sugar Maple Farms in March 2003.   Due to additional delays that were occurring with their home, the Ahos requested a meeting with the Debtor, the developer, and the builder.  During this meeting the

3

Ahos received assurances that their Sugar Maple Farms' home would be completed by May 2003. In April 2003, the Ahos sold their existing home. The Ahos moved into a rental home because the construction on their new home in Sugar Maple Farms was still in progress.

Neither the Ahos or the Kellys were able to move in to their homes in Sugar Maple Farms. The City of Flint would not issue certificate of occupancies because the installation of necessary water connections had not been completed. For quite some time, the developer had been experiencing various administrative, financial, and legal problems. In May 2003, the Kellys and the Ahos learned the full extent of these problems and attempted to work with the developer to resolve them. They were unsuccessful.

In June 2003, the Plaintiffs filed suit against the Debtor, Garrow-Loftis, and many other defendants in the Circuit Court for the County of Genesee in the State of Michigan. The Plaintiffs third amended complaint contained 22 counts. Those counts relevant to the Debtor included: Count XVI - Innocent Misrepresentation; Count XVIII - Silent Fraud; Count XIX - Fraudulent Misrepresentation. As to the Debtor, the Plaintiffs sought to recover damages sustained by them due to the Debtor's alleged misrepresentations and failure to disclose information to them in connection with their purchase of vacant lots and the construction of new homes in the Sugar Maple Farms subdivision development. The Plaintiffs sought a judgment against the Debtor and Garrow-Loftis, Inc., in excess of $25,000 plus attorney fees, costs, consequential and exemplary damages. The Debtor and Garrow-Loftis, Inc., were represented by the same counsel throughout the state court civil action.

The Plaintiffs reached settlements with several of the other defendants. In August 2006, the Plaintiffs, the Debtor and Garrow-Loftis participated in case evaluation. The panel

4

recommended an award to the Plaintiffs, which Garrow-Loftis and the Debtor rejected. The suit

proceeded to a five day jury trial that began on September 8, 2006 and continued on September

12 through September 15, 2006. The Plaintiffs called the following witnesses to testify: Mrs.

Pamela Aho, Mrs. Diana Kelly, and the Debtor. When the Plaintiffs rested, counsel for the

Debtor and Garrow-Loftis moved for directed verdict, which was denied.

The Debtor and Garrow-Loftis called the following witnesses to testify: Mr. Gaetan

Manningham, Mr. William Ayre, Mr. Robert Garrow, Mrs. Diana Kelly, Mrs. Pamela Aho, and

the Debtor. On the fourth day of the jury trial, the parties' rested their cases and the jury was

excused. The state court then discussed with counsel for the Plaintiffs' and the Debtor, the

various jury instructions to be issued including Michigan's Model Civil Jury Instruction 128.01

Fraud Based Upon False Representation[1] and 128.02 Fraud Based on Failure to Disclose Facts

---

1. M Civ. JI 128.01 states in pertinent part:

Plaintiff claims that defendant defrauded [him/her/it]. To establish fraud, plaintiff
has the burden of proving each of the following elements by clear and convincing
evidence:

    a. Defendant made a representation of [a material fact/material facts].
    b. The representation was false when it was made.
    c. Defendant knew the representation was false when [he/she/it]
       made it, or defendant made it recklessly, that is, without knowing
       whether it was true.
    d. Defendant made the representation with the intent that plaintiff
       rely on it.
    e. Plaintiff relief on the representation.
    f. Plaintiff was damaged as a result of [his/her/its] reliance.

Your verdict will be for the plaintiff (on the claim of fraud) if you decide that
plaintiff had proved each of these elements by clear and convincing evidence.

Your verdict will be for the defendant (on the claim of fraud) if you decide that
plaintiff has failed to prove any of these elements by clear and convincing evidence.

5

(Silent Fraud).[2]

Upon the return of the jury, the parties' presented their closing arguments. At the conclusion of their arguments, the record reflects that the state court instructed the jury as follows:

> Now, plaintiff's got two theories in this case; they've brought two claims. One of the claims is that these defendants defrauded them. To establish fraud, the plaintiffs have the burden of proving certain things to you . . . by clear and convincing evidence. . . . . The first thing they have to prove to you is that these defendants made a representation of a material fact about the delays in the construction of their home due to contractual, financial, political or administrative problems. The second thing they have to prove to you is that the representation

---

2. M Civ JI 128.02 states in pertinent part:

Plaintiff claims that defendant defrauded [him/her/it] by failing to disclose material facts. To establish this, plaintiff has the burden of proving each of the following elements by clear and convincing evidence:

    a. Defendant failed to disclose [a material fact/material facts] about [insert subject of the claim.]
    b. Defendant had actual knowledge of the [fact/facts].
    c. Defendant's failure to disclose the [fact/facts] caused plaintiff to have a false impression.
    d. When defendant failed to disclose the [fact/facts], defendant knew the failure would create a false impression.
    e. When defendant failed to disclose the [fact/facts], defendant intended that plaintiff rely on the resulting false impression.
    f. Plaintiff relied on the false impression.
    g. Plaintiff was damaged as a result of [his/her/its] reliance.

Your verdict will be for the plaintiff (on the claim of fraud) if you decide that plaintiff has proved each of these elements by clear and convincing evidence.

Your verdict will be for the defendant (on the claim of fraud) if you decide that plaintiff has failed to prove any one of these elements by clear and convincing evidence.

6

was false when made. The third thing they have to prove to you is that these defendants knew the representations were false when they made it, or the defendant made the representations recklessly. That is to say, without knowing whether it was true. They have to prove that the defendant made the representation with the intent that the plaintiff rely upon it. They have to prove that the plaintiff did rely upon the representation. And then they have to prove the plaintiff was damaged as a result of that reliance.

Now, your verdict is going to be for these plaintiffs either or both of them on the claim of fraud if you decide that these plaintiffs have proved each and every one of those representations by clear and convincing evidence- - each one of those elements.

Now, your verdict is going to be for the defendant on the claim of fraud if you decide that the plaintiff has failed to prove any one of those elements.

Now, they have a second theory. Plaintiff[s] claim[] that the defendants defrauded them by failing to disclose material facts. And what they have to prove there sounds a little similar, but I'm going to go through it because it's slightly different. To establish this, they have the burden of . . . proving certain elements to you by clear and convincing evidence. First[,] they have to prove to you that these defendants failed to disclose a material fact about delays in the construction of the plaintiffs' homes due to contractual, financial, political or administrative problems. They have to prove to you that these defendants had actual knowledge of the facts. They have to prove to you that the defendant[s'] failure to disclose those facts caused plaintiffs to have a false impression. They have to prove to you that when the defendant failed to disclose those facts, the defendants knew the failure would create a false impression. They have to prove to you that when the defendant failed to disclose the facts, the defendant intended that the plaintiff rely on the resulting false impression. They have to prove to you that the plaintiff did rely upon the false impression. And they have to prove that the plaintiff was damaged as a result of that reliance.

And like I said on the other theory, your verdict is going to be for the plaintiff- - either plaintiff - - if you decide that the plaintiffs have proved each of these elements by clear and convincing evidence.

Your verdict is going to be for the defendants if you decide that the plaintiffs have failed to prove any one of those elements with clear and convincing evidence.

(Def.'s Resp., Ex. 5, Tr. at 160-62, September 14, 2006 (Docket no. 41).) The Debtor's counsel

did not raise any objections to the jury instructions issued by the state court. In addition to the

7

jury instructions, the state court provided the jury with a verdict form that had been prepared by

Plaintiffs' counsel, which was also not objected to by the Debtor's counsel. The state court

explained the purpose of the verdict form to the jury and then read most of it to the jury. The

verdict form stated:

<u>Glen and Diana Kelly</u>

1. Did Defendants commit a fraudulent misrepresentation against Plaintiffs Glen
and Diana Kelly?

Yes ____ No ____

If yes, proceed to Question No. 1(A).
If no, proceed to Question No. 2.

1(A). In what amount are Glen and Diana Kelly entitled to be awarded from
Defendants for fraudulent misrepresentation, including exemplary damages?

$ _____

2. Did Defendants commit silent fraud against Plaintiffs Glen and Diana Kelly?

Yes ____ No ____

If yes, proceed to Question 2(A).
If no both to Sections 1 and 2 proceed to Question 4.

2(A). In what amount are Glen and Diana Kelly entitled to be awarded from
Defendants for silent fraud including exemplary damages?

$ _____

3. What is the total amount of damages awarded to Glen and Diana Kelly?

$ _____

<u>Andrew and Pamela Aho</u>

4. Did Defendants commit a fraudulent misrepresentation against Plaintiffs
Andrew and Pamela Aho?

Yes _____   No _____

If yes, proceed to Question No. 4(A).
If no, proceed to Question No. 5.

4(A).  In what amount are Andrew and Pamela Aho entitled to be awarded from
Defendants for fraudulent misrepresentation, including exemplary damages?

$ _____

5.  Did Defendants commit silent fraud against Plaintiffs Andrew and Pamela
Aho?

Yes _____   No _____

If yes, proceed to Question 5(A).
If you answered no to both Questions 4 and 5 your work is complete.  Please
notify the Court Officer.

5(A).  In what amount are Andrew and Pamela Aho entitled to be awarded from
Defendants for silent fraud including exemplary damages?

$ _____

6.  What is the total amount of damages awarded to Andrew and Pamela Aho?

$ _____

(Plf's Brf., Ex. 5(B) (Docket no. 31).)  The jury returned a verdict for the Plaintiffs.  The jury

completed the jury verdict form.  With regard to the Kellys, the jury responded "yes" to questions

1 and 2 about whether the Debtor and Garrow-Loftis committed fraudulent misrepresentation and

silent fraud.  The jury awarded the Kellys $187,272 for fraudulent misrepresentation and

$170,000 for silent fraud.  The total amount of damages awarded to them was $357,272.  Both

awards included exemplary damages.  For the Ahos, the jury completed the verdict form and

responded "yes" to questions 4 and 5 about whether the Debtor and Garrow-Loftis committed

fraudulent misrepresentation and silent fraud.  The jury awarded the Ahos $132,156 for

9

fraudulent misrepresentation and $50,000 for silent fraud. The total amount of damages awarded to them was $182,156. Like the Kelly's award, the award to the Ahos included exemplary damages.

The Debtor and Garrow-Loftis filed several post-verdict motions, which included a motion to assess common law setoff due to prior settlements, a motion for setoff of collateral source payments, a motion for judgment not withstanding the verdict, a motion for a new trial, and a motion for remittitur. The state court denied these motions. On December 20, 2007, the Genesee County Circuit Court entered an Amended Final Judgment ("Amended Final Judgment") that states in relevant part:

> IT IS FURTHER ORDERED that, upon the Verdict Form rendered on September 15, 2006, a Judgment be, and hereby is, entered in favor of Plaintiffs Glen and Diana Kelly in the total amount of $357,272.000 and against Defendants Robert Moen and Garrow-Loftis, Inc., jointly and severally, a total amount which includes within it the two verdict amounts of $187,272.00 awarded by the jury to Plaintiffs Kelly on the fraudulent misrepresentation claim and $170,000.00 awarded by the jury to Plaintiffs Kelly on the silent fraud claim, inclusive of interest from the date of filing of the Complaint to the date of the rendering of the verdict.
>
> IT IS FURTHER ORDERED that, upon the Verdict Form rendered on September 15, 2006, a Judgment be, and hereby is, entered in favor of Plaintiffs' Andrew and Pamela Aho in the total amount of $182,156.00 against Defendants Robert Moen and Garrow-Loftis, Inc., jointly and severally, a total amount which includes within it the two verdict amounts of $132,156.00 awarded by the jury to Plaintiffs Aho on the fraudulent misrepresentation claim and $50,000 awarded by the jury to Plaintiffs Aho on the silent fraud claim, inclusive of interest from the date of filing of the complaint to the date of the rendering of the verdict.
>
> IT IS FURTHER ORDERED that, pursuant to the preceding ordering paragraphs, a Final Judgment be, and it hereby is, entered in favor of Plaintiffs Glen and Diana Kelly and against Defendants Robert Moen and Garrow-Loftis, Inc., jointly and severally, in the total amount of $404,917.00 [including accumulated interest of $26,834.00 through December 31, 2007 $6,450.00 awarded by the January 9, 2007 Order and accumulated interest thereon of $361.00; and an additional $14,000

under MCR 2.403].[3]

IT IS FURTHER ORDERED that, pursuant to the preceding ordering paragraphs, a Final Judgment be, and it hereby is, entered in favor of Plaintiffs Andrew and Pamela Aho and against Defendants Robert Moen and Garrow-Loftis, Inc., jointly and severally, in the total amount of $216,641.00 [including accumulated interest of $13,674.00 through December 31, 2007; $6,450.00 awarded by the January 9, 2007 Order and accumulated interest thereon of $361.00; and an additional $14,000 under MCR 2.403].

IT IS FURTHER ORDERED that, upon its entry, interest shall accrue on this Amended Final Judgment in favor of Plaintiffs Glen and Diana Kelly and Andrew and Pamela Aho on their respective awards as detailed above and against Defendants Robert Moen and Garrow-Loftis, Inc., jointly and severally, pursuant to MCL 600.6013(8) at the applicable statutory rates provided thereunder until this Amended Final Judgment is fully satisfied.

IT IS FURTHER ORDERED that this is a Final Judgment pursuant to MCR 2.602(A)(3) as it disposes of all claims of all parties and closes the case.

(Compl, Ex. 1 (Docket no. 1).)

On March 5, 2008, Theodore R. Moen and Julie C. Moen filed a joint chapter 7 petition.

(Case #08-30874). On June 12, 2008, the Kellys and the Ahos (the "Plaintiffs") filed a three

count nondischargeability of debt complaint against the Debtor. The Plaintiffs seek a

determination that the debts owed by the Debtor under the Amended Final Judgment are non-

dischargeable under § 523(a)(2)(A), § 523(a)(4), or § 523(a)(6). The Debtor filed an answer and

affirmative defenses.

The Plaintiffs now move for summary judgment arguing that collateral estoppel bars the

Debtor from relitigating the issues determined in the state civil action that are identical to the

elements required under their § 523(a) nondischargeability claims. In support of their motion, the

_____

3. This language that appears in brackets in this paragraph and the next paragraph is as it is indicated in the Amended Final Judgment.

11

Plaintiffs filed a brief and several exhibits including copies of the Amended Final Judgment, the jury verdict form, and portions of the transcripts from the five day jury trial.

The Debtor opposes the Plaintiffs' motion. The Debtor filed a response, a brief, and numerous exhibits, which included the Debtor's affidavit and an affidavit by Mr. Jason Jones, trial counsel for the Debtor and Garrow-Loftis in the state court action. Additional exhibits filed by the Debtor included copies of: the transcripts from each day of the jury trial, affidavits filed by the Plaintiffs in the state court action, settlement agreements between the Plaintiffs and the City of Flint (who was also named as a defendant in the state court action between the Plaintiffs and the Debtor), notice of case evaluation acceptance/ rejection, and several post-verdict motions filed in the state court action. The Court reviewed all of these exhibits to issue this opinion.

A hearing was held on the Plaintiffs' motion for summary judgment. During the hearing, the Court granted the Plaintiffs' request to supplement the record with additional documents filed in the state court action. At the conclusion of the hearing, the Court took this matter under advisement.

III.  Applicable Law

A.      *Summary Judgment Standard*

Fed. R. Bankr. P. 7056 renders Fed.R.Civ.P. 56 applicable in adversary proceedings. Rule 56(c) states that a

> judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

The central inquiry is "whether the evidence presents a sufficient disagreement to require

12

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

It is the burden of the moving party to inform the Court of the basis of its motion and identify those portions of the record that establish the absence of a material issue of fact. *Celotex*, 477 U.S. at 323. Once the movant fulfills this responsibility, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This requires the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. A "dispute about a material fact is 'genuine'. . . if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. at 248. To demonstrate a genuine issue, the non-moving party must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Anderson v. Liberty Lobby*, 477 U.S. at 252. "A material fact is one that would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties, and would necessarily affect the application of an appropriate principle of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

At the summary judgment stage in the litigation, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. at 249. "The judge must ask himself

not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-

minded jury could return a verdict for the plaintiff on the evidence presented." *Id*. at 252. The

court must believe the non-movant's evidence and draw "all justifiable inferences" in her favor.

*Id.* at 255. Summary judgment is appropriately granted when the issues in a case involve solely

the application of law to undisputed facts. *Panetta v. Sondergeld* (*In re Sondergeld*), 327 B.R.

313, 315 (Bankr. E.D. Mich. 2005).

B.    *Collateral Estoppel*

Collateral estoppel applies in bankruptcy dischargeability actions. *Grogan v. Garner*, 498

U.S. 279 (1991). A party bears the burden of proving that collateral estoppel is applicable in a

dischargeability action by a preponderence of the evidence standard. *Id*. at 291.

> In recent years, the Supreme Court has issued a series of decisions expanding the
> analysis that federal courts must use to determine whether to give a state judgment
> preclusive effect. Rather than relying solely on the judicial doctrine of collateral
> estoppel, a federal court must first consider whether the Full Faith and Credit Act
> requires it to accord the state judgment the same preclusive effect that the
> judgment would receive under state law.
>
> The Full Faith and Credit Act states, in relevant part, that state court "judicial
> proceedings shall have the same full faith and credit in every court within the
> United States . . . as they have by law or usage in the courts of such State . . . from
> which they are taken."
>
> The Sixth Circuit has held that the Full Faith and Credit Act applies in
> dischargeability proceedings. . . . [T]he bankruptcy court must initially determine
> whether a state court judgment would receive preclusive effect in the state where it
> was rendered. If so, the bankruptcy court must give the state court judgment
> preclusive effect unless it determines that an exception to the Full Faith and Credit
> Act exists.

*Cresap v. Waldorf* (*In re Waldorf*), 206 B.R. 858, 862 (Bankr. E.D. Mich. 1997) (quoting 28 U.S.

§ 1738 (citations omitted).

In this case, the Amended Final Judgment was rendered by a Michigan court. As a result, this Court must apply the Full Faith and Credit Act and give the Amended Final Judgment the same preclusive effect that is recognized by Michigan law. The Michigan Supreme Court has explained that the doctrine of collateral estoppel is "applied . . . to strike a balance between the need to eliminate repetitious and needless litigation and the interest in affording litigants a full and fair adjudication of the issues involved in their claims." *Storey v. Meijer, Inc*., 429 N.W.2d 169 (Mich. 1988). To preclude the relitigation of an issue in a subsequent proceeding, the collateral estoppel standard under Michigan law requires that a party establish: "(1) 'a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment;' (2) 'the same parties must have had a full [and fair] opportunity to litigate the issue;' and (3) 'there must be mutuality of estoppel.'" *Monat v. State Farm Ins. Co*., 677 N.W.2d 843, 845-46 (Mich. 2004) (quoting *Storey v. Meijer, Inc*., 429 N.W. 2d 169, 171 n.3 (1988)) (alternation in original and footnote omitted).

       1.      Actually Litigated

A question of fact or law is actually litigated when it is "put into issue by the pleadings, submitted to the trier of fact . . . , and determined." *VanDeventer v. Michigan Bank*, 432 N.W.2d 338 (1988) .

       2.      Determined by a Valid and Final Judgment

Under Michigan law, "[a]n issue is necessarily determined only if it is 'essential' to the judgment. . . . Collateral estoppel applies only where the basis of the prior judgment can be ascertained clearly, definitely, and unequivocally." *People v. Gates*, 452 N.W.2d at 631 (citation omitted). "[A] finding upon which the judgment did not depend cannot support collateral estoppel" *Bd. of Co. Comm'rs v. Schultz*, 521 N.W.2d 847, 850 (Mich. Ct. App. 1994) (citations

15

omitted). "For collateral estoppel to apply, the issues must be identical, and not merely similar."

*Horn v. Department of Corrections*, 548 N.W.2d 660, 662 (Mich. Ct. App. 1996) (internal

quotation marks and citation omitted).

3. Full and Fair Opportunity to Litigate Issue

To determine whether a party has had a "full and fair" opportunity to litigate an issue, the

Supreme Court of Michigan directs courts to also consider the factors set forth in § 28 and § 29 of

the Second Restatement of Judgments. *Gilbert v. Ferry*, 413 F.3d 578, 581-82 (6th Cir. 2005)

(citing *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 847 n.2 (2004) (other citations omitted).

In certain circumstances and if established, the factors provided for in Sections 28 and 29 create

an exception to collateral estoppel to enable a party to relitigate an issue even though it has been

be actually litigated and necessarily determined under a valid and final judgment. *Id*. Section 28

states:

> Although an issue is actually litigated and determined by a valid and final
> judgment, and the determination is essential to a judgment, relitigation of the issue
> in a subsequent action between the parties is not precluded in the following
> circumstances:
>
>   (1) The party against whom preclusion is sought could not, as a matter of law,
>   have obtained review of the judgment in the initial action; or
>
>   (2) The issue is one of law and (a) the two actions involve claims that are
>   substantially unrelated, or (b) a new determination is warranted in order to take
>   account of an intervening change in the applicable legal context or otherwise to
>   avoid inequitable administration of the laws; or
>
>   (3) A new determination of the issue is warranted by differences in the quality
>   or extensiveness of the procedures followed in the two courts or by factors
>   relating to the allocation of jurisdiction between them; or
>
>   (4) The party against whom preclusion is sought had a significantly heavier
>   burden of persuasion with respect to the issue in the initial action than in the
>   subsequent action; the burden has shifted to his adversary; or the adversary has

16

a significantly heavier burden than he had in the first action; or

(5) There is a clear and convincing need for a new determination of the issue
(a) because of the potential adverse impact of the determination on the public
interest or the interests of persons not themselves parties in the initial action,
(b) because it was not sufficiently foreseeable at the time of the initial action
that the issue would arise in the context of a subsequent action, or (c) because
the party sought to be precluded, as a result of the conduct of his adversary or
other special circumstances, did not have an adequate opportunity or incentive
to obtain a full and fair adjudication in the initial action.

Restatement (Second) of Judgements § 28 (1982). The exception provided under subsection (1)

only applies "when review is precluded as a matter of law. It does not apply in cases where

review is available but is not sought." Restatement (Second) of Judgments § 28 cmt. h.

Section 29 states:

A party precluded from relitigating an issue with an opposing party, in
accordance with §§ 27 and 28, is also precluded from doing so with another person
unless the fact that he lacked full and fair opportunity to litigate the issue in the
first action or other circumstances justify affording him an opportunity to relitigate
the issue. The circumstances to which considerations should be given include
those enumerated in § 28 and also whether:

(1) Treating the issue as conclusively determined would be incompatible with an
applicable scheme of administering the remedies in the actions involved;

(2) The forum in the second action affords the party against whom preclusion is
asserted procedural opportunities in the presentation and determination of the issue
that were not available in the first action and could likely result in the issue being
differently determined;

(3) The person seeking to invoke favorable preclusion, or to avoid unfavorable
preclusion, could have effected joinder in the first action between himself and his
present adversary;

(4) The determination relied on as preclusive was itself inconsistent with another
determination of the same issue;

(5) The prior determination may have been affected by relationships among the
parties to the first action that are not present in the subsequent action, or apparently
was based on a compromise verdict or finding;

17

    (6) Treating the issue as conclusively determined may complicate determination of issues in ths subsequent action or prejudice the interests of another party thereto;

    (7) The issue is one of law and treating it as conclusively determined would inappropriately foreclose opportunity for obtaining reconsideration of the legal rule upon which it was based;

    (8) Other compelling circumstances make it appropriate that the party be permitted to relitigate the issue.

Restatement (Second) of Judgments § 29 (1982).

        4.        Mutuality of Estoppel

The mutuality of estoppel requirement is satisfied when the party in the subsequent proceeding was "a party, or in privy to a party, in the previous action." *Monat v. State Farm Ins. Co.*, 677 N.W.2d at 846 (holding that the mutuality of estoppel element is not required when collateral estoppel is being used defensively) (citations omitted). "In other words, the estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him." *Id*. (citations omitted).

IV.  <u>Discussion</u>

    A.  *Plaintiffs are entitled to summary judgment on their Section 523(a)(2)(A) claim*

Section 523(a) states that a

discharge under [§] 727 . . . does not discharge an individual debtor from any debt —

    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by —

      (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

Each of the following elements must be proven by a creditor to except a debt from discharge

18

under Section 523(a)(2)(A):

> (1) the debtor obtained money . . . [property, services, . . . or an extension . . . of credit] . . .;
> (2) through a material misrepresentation;
> (3) that, at the time, the debtor knew was false or made with gross recklessness as to its truth;
> (4) the debtor intended to deceive the creditor;
> (5) the creditor justifiably relied on the false representation; and
> (6) its reliance was the proximate cause of the loss.

*Rembert v. AT&T Universal Card Services, Inc.*, (*In re Rembert*), 141 F.3d 277, 280-81 (6th Cir. 1998) (citing *Longo v. McLaren* (*In re McLaren*), 3 F.3d 958, 961 (6th Cir. 1993)).

Under 523(a)(2)(A), "[f]alse representations and pretenses encompass statements that falsely purport to depict current or past facts." *Haney v. Copeland* (*In re Copeland*), 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003) (quoting *Peoples Sec. Fin. Co., Inc., v. Todd* (*In re Todd*), 34 B.R. 633, 635 (Bankr. W.D. Ky. 1983). "'False pretense' involves implied misrepresentation or conduct intended to create and foster a false impression, as distinguished from a 'false representation' which is an express misrepresentation." *Id.* (other citations omitted).

The Plaintiffs contend that each of the elements under § 523(a)(2)(A) were actually litigated and necessarily determined by the jury verdict and under the Amended Final Judgment. As a result, the Plaintiffs assert that there they should not be required to relitigate these issues in this adversary proceeding.

The mutuality of estoppel element is met as the Plaintiffs and the Debtor are identical parties in the state court civil action and this adversary proceeding, which is a different cause of action. The state civil action ended upon the entry of the Amended Final Judgment, which is a valid final judgment between the parties to satisfy that collateral estoppel requirement under Michigan law.

19

The Court also concludes that the other two requirements — actually litigated and necessarily determined — have been proven by the Plaintiffs.   The record of the state court civil action  establishes the actually litigated requirement.  There is no dispute that the Debtor fully participated in the state court civil action.  The Debtor filed an answer, engaged in discovery, participated in case evaluation, testified at the jury trial, and filed numerous post-verdict motions.

Turning to the necessarily determined element, the Court notes that

> Bankruptcy courts in Michigan have uniformly concluded that the elements of a fraud claim under Michigan law are virtually identical to the elements necessary to determine non-dischargeability under § 523(a)(2)(A).

> As is shown by comparing the two sets of fraud elements [under § 523(a)(2)(A) and Michigan common law fraud], . . . [t]he elements of a dischargeability case under 11 U.S.C. § 523(a)(2)(A) for false misrepresentation and fraud are virtually identical to the elements that Michigan requires to establish fraudulent misrepresentation.  Thus, a state court judgment based upon fraud necessarily encompasses a finding of all the elements of Section 523(a)(2)(A) and is entitled to collateral estoppel effect in a subsequent bankruptcy court action.

*Transnation Title Ins. Co. v. Livingston* (*In re Livingston*), 368 B.R. 610, 617-18 (Bankr. E.D. Mich. 2007) (citations omitted).

The jury instructions along with the rest of the transcripts of the five day jury trial in the record in this proceeding definitely indicate that each of the elements necessary to prove false misrepresentation or fraud under § 523(a)(2)(A) were necessarily determined by the jury in the state court action.  The jury heard the evidence, weighed the credibility of the various witnesses, and rendered a verdict against the Debtor.  As a result, the Court concludes that each of the requirements for issue preclusion under Michigan law are satisfied in the Plaintiffs' § 523(a)(2)(A) fraudulent misrepresentation claim.

The Debtor contends that the Plaintiffs cannot establish that the Debtor had a full and fair

20

opportunity to litigate the issues in the state civil action. The Debtor's affidavit states that he did not pursue an appeal due to his limited financial means. (Def.'s Resp. Ex. 17 (Docket no. 42).) The Debtor argues that this reason indicates that the state court action was not fully litigated. The Court disagrees.

In *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 847 (2004), the Michigan Supreme Court determined that a party who voluntarily waived his right to appeal had still received a full and fair opportunity to litigate the issue. As recognized by the court in *Monat*, the "general rule permits relitigation when the party against whom preclusion is sought could not, *as a matter of law*, have obtained review of the judgment in the initial action." *Id.* (quoting Restatement (Second) of Judgments § 28(1)) (internal quotations omitted). In the Debtor's case, like the party in *Monat*, the Debtor was not precluded as a matter of law from obtaining a review of the state court action. He voluntarily chose not to continue to pursue his appellate rights once Garrow-Loftis decided to cease appellate review for financial reasons. While the Court has no reason to doubt the Debtor's explanation about his limited financial resources, this explanation is insufficient under Michigan law to prevent the establishment of the "full and fair opportunity to litigate the issue" element required for collateral estoppel.

The Court turns next to another argument made by the Debtor about the type of review of the state court proceeding this Court must conduct. In his response, the Debtor contends that this "Court now has the power to set the record straight in this matter." (Def.'s Resp. at 7-8 (Docket no. 41).) The Debtor also argues that "[w]hile the jury did make a finding in [the state court] case in favor of the Plaintiffs, as this Court can see by the voluminous exhibits attached hereto, the great weight of evidence did not support a finding of fraud on the part of the Debtor." (Def.'s

21

Resp. at 8 (Docket no. 41).)  The Debtor then goes on his response to raise numerous procedural and evidentiary arguments that he asserts are "examples of appealable error[s]."  (Def.s' Resp. at 26-29 (Docket no. 41).)  None of these arguments may be considered by this Court.  These types of arguments by the Debtor should have been raised in the state court or been raised on appeal from the state court.  The type of review of the state court civil action the Debtor suggests that this Court must make is contrary to and precluded by the Full Faith and Credit Act.  *Bay Area Factors v. Calvert* (*In re Calvert*), 105 F.3d 315 (6th Cir. 1997) (recognizing that the Full Faith and Credit Act applies without exception in dischargeability proceedings).  Under the Full Faith and Credit Act, this Court is to refrain from acting as an appellate court and may not consider collateral attacks on the Amended Final Judgment.  *Cresap v. Waldorf* (*In re Waldof*), 206 B.R. 858, 868 (Bankr. E.D. Mich. 1997) (explaining that a debtor cannot use a bankruptcy court to appeal a state court judgment).  In this proceeding, the Full Faith and Credit Act requires this Court to look to and apply the principles of collateral estoppel, as recognized under Michigan law, to the state court civil action.  As previously stated, the Court determines that the Plaintiffs are entitled to summary judgment on Count I of their Complaint because each of the required collateral estoppel elements under Michigan law are satisfied in the Plaintiffs' § 523(a)(2)(A) fraudulent misrepresentation claim to bar the Debtor from relitigating these issues in this Court.

B.  *Plaintiffs are not entitled to summary judgment on their Section 523(a)(4) claim*

Plaintiffs argue that collateral estoppel prevents the Debtor from disputing that the debts he owes them under the Amended Final Judgment are nondischargeable "for fraud or defalcation while acting in a fiduciary capacity" under § 523(a)(4).  The Debtor disagrees.

The Sixth Circuit Court of Appeals in *In re Bucci*, 493 F.3d 635 (6th Cir. 2007), explained the meaning of the phrase "defalcation while acting in a fiduciary capacity" by quoting from several prior decisions.

> A debt is nondischargeable as a defalcation when the preponderance of the evidence establishes: "(1) a preexisting fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss."  *In re Blaszak,* 397 F.3d at 390.

> The Sixth Circuit "construes the term 'fiduciary capacity' found in the defalcation provision of § 523(a)(4) more narrowly than the term is used in other circumstances."  *In re Blaszak*, 397 F. 3d at 391.  In *Carlisle Cashway, Inc. v Johnson* (*In re Johnson*), 691 F.2d 249, 251-52 (6th Cir.1982), and *In re Interstate Agency*, 760 F.2d at 125, we limited the application of the defalcation provision to express or technical trusts and refused to extend it to constructive or implied trusts imposed by operation of law as a matter of equity.  The decisions in those cases relied on the Supreme Court's holding in *Davis v. Aetna Acceptance Co*., 293 U.S. 328, 333, 55 S.Ct.151, 153, 79 L.Ed. 393 (1934) that the defalcation provision applies only to express or technical trusts.  Again in *In re Garver*, we adopted a narrow definition of the defalcation provision and held that it does not apply to someone who merely fails to meet an obligation under a common law fiduciary relationship.  *In re Garver*, 116 F.3d at 179. . . . Accordingly, the defalcation provision applies to "only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor."  *In re Garver,* 116 F.3d at 180.

> To establish the existence of an express or technical trust, a creditor must demonstrate: "(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary."  (citation omitted)

*In re Bucci*, 493 F.3d at 639-640.

The only collateral element established by the Plaintiffs on their § 523(a)(4) claim is mutuality of estoppel.  Plaintiffs and the Debtor are the same parties to the state court civil action

and in this adversary proceeding. The remaining collateral estoppel elements: actually litigated, necessarily determined by a valid and final judgment, and the full and fair opportunity to litigate the issue were not proven by the Plaintiffs.

As acknowledged by the Plaintiffs in their brief, their state court civil action against the Debtor was limited to two theories – fraudulent misrepresentation and silent fraud. These were the ultimate issues in their civil action. The issue under Plaintiffs' § 523(a)(4) claim is whether the Debtor breached fiduciary duties he owed to the Plaintiffs due to the existence of an express or technical trust. There is nothing in the record before the Court to indicate that the issue of the existence of an express trust or technical trust was actually litigated and necessarily determined in the state civil action or under the Amended Final Judgment. The Debtor's breach of any fiduciary duties he owed the Plaintiffs based on the existence of an express or technical trust relationship were not pled, raised in or a part of their state court civil action and were not essential to the Amended Final Judgment. At most, the issue of the Debtor's breach of the fiduciary duties he owed to them as their real estate agent was involved. Yet, this type of fiduciary relationship "is insufficient to establish the necessary fiduciary relationship for defalcation under § 523(a)(4)." *R.E. America, Inc. v. Garver* (*In re Garver*), 116 F.3d 176, 179 (6th Cir. 1997). Collateral estoppel does not apply to prevent the Debtor from challenging the Plaintiffs' § 523(a)(4) claim. The Plaintiffs request for summary judgment on Count II of their Complaint is denied.

C. *Plaintiffs are not entitled to summary judgment on their Section 523(a)(6) claim*

The Plaintiffs also seek a determination that the debts owed to them by the Debtor under the Amended Final Judgment are nondischargeable under § 523(a)(6). Section 523(a) states that a

discharge under [§] 727 . . . does not discharge an individual debtor from any

24

debt —

> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

Based on statute's plain language, the debt "must be for an injury that is both willful and malicious. The absence of one creates a dischargeable debt." *Markowitz v. Campbell*, (*In re Markowtiz*), 190 F.3d 455, 463 (6th Cir. 1999). Debts that arise from reckless or negligent acts are not encompassed within § 523(a)(6). *Kawaauhau v. Geiger*, 523 U.S. 57, 63, 118 S.Ct. 974, 978 (1998). Instead, debts that arise from those acts undertaken with the actual intent to cause injury fall squarely within § 523(a)(6). *Id.* As explained by the *Geiger* court:

> The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead 'willful acts that cause injury.' Or, Congress might have selected an additional word or words, i.e., 'reckless' or 'negligent' to modify 'injury.'

*Kawaauhau v. Geiger*, 523 U.S. at 62-3, 118 S.Ct. at 977 (emphasis in original). With citation to the Restatement (Second) of Torts, the *Geiger* court also explained that "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'" *Id.* (quoting Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964)) (emphasis in original).

In *Markowitz v. Campbell* (*In re Campbell*), 190 F.3d 455, (6th Cir. 1999), the Sixth Circuit Court of Appeals applied and expanded on the *Geiger* analysis of § 523(a)(6) to hold that "unless 'the actor desires to cause [the] consequences of his act, or . . . believes that the consequences are substantially certain to result,' . . . he has not committed a 'willful and

malicious injury' as defined under § 523(a)(6)." 190 F.3d at 464 (quoting Restatement (Second) of Torts § 8A, at 15 (1964)).

In the context of § 523(a)(6), the term "malice" was defined long ago by the United States Supreme Court in *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505 (1904) as meaning "a wrongful act, done intentionally, without just cause or excuse." 193 U.S. at 485-86 (interpreting analogous § 17(a)(2) of the former Bankruptcy Act) (internal quotation marks and citation omitted). Alternatively, "malicious" means "in conscious disregard of one's duties." *Monsanto Co., v. Trantham* (*In re Trantham*), 304 B.R. 298, 308 (B.A.P. 6th Cir. 2004).

The Plaintiffs make two arguments in support of their § 523(a)(6) claim. First, they argue that each of the collateral estoppel elements are met under their § 523(a)(6) because the intentional torts that underlie the Amended Final Judgment fulfill the "willful and malicious" standard of § 523(a)(6). Second, the Plaintiffs argue that the jury's award of exemplary damages to both of them required the jury to find that the Debtor's actions were willful and malicious. The Plaintiffs' position is not supported by the record of the state court civil action.

Applying the collateral estoppel elements to the Plaintiffs' § 523(a)(6) claim, the Court, once again, determines that the mutuality of estoppel element is fulfilled because the Plaintiffs and the Debtor are the same parties involved in the prior state civil action and in this adversary proceeding, which involves different causes of action. The more problematic collateral estoppel elements for the Plaintiffs are whether the willful and malicious standard of § 523(a)(6) were actually litigated and necessarily determined in the state civil action.

In reviewing the relevant counts of the Plaintiffs' complaint, the focus of the allegations against the Debtor consisted of the Plaintiffs' purchase of lots in the Sugar Maple Farms

development and then the construction of new homes based on representations made by the Debtor; that the Debtor (along with other defendants) made material misrepresentations to them about their ability to occupy their homes; that the Debtor failed to inform them of the "litany of contractual, financial, political, or administrative" problems that existed or about the water, sewer, and utilities connection problems; that the Plaintiffs' relied on the Debtor's misrepresentations and omissions to their detriment; and had suffered significant damages as a result. The Plaintiffs asserted that these allegations constituted fraudulent misrepresentation and silent fraud. Noticeably absent from these claims are any allegations that the Debtor intentionally sought to harm or injure the Plaintiffs and that he did so in conscious disregard of any duties without just cause or excuse. As a result then the Court determines that Plaintiffs' § 523(a)(6) claim is not identical to the issues raised in their state court civil action.

The Court now turns to the Plaintiffs' argument that the willful and malicious standard is satisfied solely based upon the jury's award of exemplary damages to the Plaintiffs. The jury instructions given by the state court to the jury provided that

> the plaintiff[s] are also asking for something called exemplary damages. And that's a class of compensatory damages that allow for compensation of injury to feelings. In order to justify an award of exemplary damages, the act or conduct complained of must be voluntary and the act must inspire feelings of humiliation, outrage and indignity. The act or conduct must also be malicious or so wilful and wanton . . . as to demonstrate a reckless disregard of the plaintiff[s'] rights.

(Def.'s Resp., Ex. 5, Tr. at 163-64, September 14, 2006) ("Tr. 9/14/06") (Docket no. 41).) The state court instructed the jury that the phrase "wanton misconduct" means "conduct or a failure to act that shows such indifference to whether harm will result as to be equal to a willingness that harm will result." (Tr. 9/14/06 at 159). The jury was further instructed that the phrase "wilful misconduct means conduct or failure to act that was intended to harm the plaintiffs." (Tr. 9/14/06

27

at 159). The legal standard under § 523(a)(6) is quite different than the exemplary damages standard explained to the jury.

The Court concludes that the elements under § 523(a)(6) were not a part of or essential to the state court civil action or the Amended Final Judgment. The Court will deny the Plaintiffs' request for summary judgment on Count III of their Complaint based on application of collateral estoppel principles.

## V. Conclusion

After a thorough and careful review of the pleadings and transcripts of the state civil case, this Court concludes that the Plaintiffs established each of the collateral estoppel elements under Michigan law with regard to the Debtor's fraudulent misrepresentation to prevent the Debtor from relitigating the elements under § 523(a)(2)(A) in this proceeding. These issues were actually litigated and determined by the jury verdict rendered in the prior state court action and subsequently incorporated into the Amended Final Judgment. As a result, the Plaintiffs are entitled to summary judgment as to Count I of their Complaint. The Court further concludes that the Plaintiffs failed to prove that the required elements of their claims for nondischargeability under § 523(a)(4) and § 523(a)(6) were actually litigated and determined by the Amended Final Judgment. Therefore, the Plaintiffs are not entitled to summary judgment as to Counts II and III of their Complaint. In reaching these conclusions, the Court carefully reviewed the exhibits submitted by the parties and considered all of the parties' arguments, regardless of whether or not they are specifically referred to in this opinion. The Court will enter a separate order consistent with this opinion.

Signed on March 29, 2010

                              /s/ Daniel S. Opperman
                              Daniel S. Opperman
                              United States Bankruptcy Judge